2020 IL App (1st) 170988-U

FIFTH DIVISION
March 27, 2020

No. 1-17-0988

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 16 CR 12877 |
| | ) | |
| BRANDON MCNEIL, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE DELORT delivered the judgment of the court.
Presiding Justice Hoffman and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    ***Held:*** We reverse the defendant's conviction for possession of a firearm with a defaced serial number because, even viewing the evidence in the light most favorable to the State, there was insufficient evidence to convict him on that offense.

¶ 2    Following a bench trial, defendant Brandon McNeil was convicted of one count of possession of a firearm with a defaced serial number (720 ILCS 5/24-5(b) (West 2014)) and sentenced to 25 months' imprisonment. On appeal, defendant argues the State failed to prove him guilty beyond a reasonable doubt, that he received ineffective assistance of counsel, and that the

underlying statute is unconstitutional as applied to him. We reverse on the basis that the State failed to prove defendant guilty of possession of a defaced weapon beyond a reasonable doubt.

¶ 3    The evidence adduced at trial shows that on August 3, 2016, Chicago police officers Derek Duszak and Daniel McGreal responded to a call in their marked police car when they saw defendant and others flee from a car parked in a vacant lot located at 10219 South Prospect Avenue. The officers chased defendant from the car to a home next door at 10221 South Prospect. During the chase, Officer Duszak observed defendant holding his side, but later testified that defendant used two hands to jump over a seven-foot fence and did not drop anything as he did so. Defendant then entered the rear of the home, but the officers did not follow him. The officers set up a perimeter around the residence and checked the license plate of the vehicle from which defendant fled. The license plate did not match the vehicle. Officer Duszak recovered defendant's driver's license from the vehicle and sent the information to Chicago police officer Kristen Fahey, who served as the district intelligence officer monitoring social media on that day. She recognized defendant's photograph as a person she had been monitoring on Twitter with the account handle "#@58_powermoves."

¶ 4    While the officers waited outside the home, Officer Fahey viewed defendant's Twitter account and saw him broadcasting a live feed to the public on Twitter. Officer Fahey sent clips and images of the live tweet to Officer Duszak. The circuit court allowed the clips to be admitted and published at trial. The video clips showed defendant broadcasting from the basement of the home, claiming the police were searching for him and that they would not find him. He turned his camera phone to face out the window, capturing the image of Officer McGreal in the video. He then panned it back to himself and stated, "I hid the pole, bitch. I hid the pole. They just chased the shit out of me. I ain't going to jail ***." He then asked, "y'all wanna see my hiding out spot?

They can't see it but y'all can see it, look." Defendant pointed the camera phone to a flower pot, which showed a gun. Officer Fahey identified defendant as the person depicted on the driver's license and in the video, and identified him as the same person in open court.

¶ 5    Police officers received consent to search the residence at 10221 Prospect from the homeowner and found defendant in a room in the basement. They detained defendant for trespassing the residence and seated him in a chair. The officers did not provide defendant a *Miranda* warning.

¶ 6    Chicago police officer Kenneth Matlob performed a search of the room, including a closet located "under 12 feet" from where defendant sat. Officer Matlob searched a closet "where the shoes were" and began patting down a mix of men's and women's clothing. When he first started searching the closet, defendant became very agitated and began asking him why he was searching there. Officer Matlob found a small, silver, "older model revolver" in the pocket of a men's jacket hanging on the right-hand side of the closet. He showed the gun to defendant, who then stated, "Yeah, that's mine. You got me. Take me to jail."

¶ 7    Officer Matlob inspected the revolver and saw that the serial number had been "scratched off and it was illegible to where I could see it." Officer Matlob testified that he could not recall where on the gun the serial number was supposed to be located. He stated that the revolver had a large scratch on it, but he did not remember where on the gun the scratch was located. Neither the revolver itself nor a photograph of the revolver were submitted as evidence at trial.

¶ 8    The officers continued to search for the gun depicted in the livestream video that had been broadcasted by defendant. Chicago police officer A. Schur found the firearm shown in the video sitting above the top of ductwork. At trial, Officer Duszak described the firearm as a Larsen .38 caliber semiautomatic silver and black handgun. The officers took that weapon and inventoried it,

but the State did not introduce it as evidence at trial. Following his arrest, defendant was charged with one count of possession of a firearm with a defaced serial number and two counts of aggravated unlawful use of a weapon based on his possession of the semiautomatic pistol.

¶ 9     The circuit court acquitted defendant of the two counts of unlawful possession of the semiautomatic weapon because the State failed to prove he was not an invitee in the home and, thus, it was not unlawful for him to possess a firearm. However, the court found defendant guilty of possession of a defaced firearm, stating:

> "[T]he weapon was there, the defendant was agitated when Officer Matlob was in that closet, and then when *** Officer Matlob recovered that weapon, the defendant made the statements, 'Take me to jail. That's mine,' or words to that effect.
>
> As far as the defacing, *** Officer Matlob testified that the serial number was eradicated from there, and he said he didn't know what was on there before. Of course, he didn't, if he couldn't see if there was nothing visible at that time, he doesn't know what was on there before. So I find that the State has proved Count 1 beyond a reasonable doubt. There will be a finding of guilty."

¶ 10    The circuit court denied defendant's motion for a new trial. The court sentenced defendant to 25 months' imprisonment. Defendant immediately moved to reconsider his sentence, which the court denied. This appeal followed.

¶ 11                                    ANALYSIS

¶ 12    We first address defendant's argument that this court should reverse his conviction because the State failed to prove him guilty beyond a reasonable doubt of possession of a defaced firearm.

¶ 13   The State has the burden of proving each element of a charged offense beyond a reasonable doubt. *People v. Brown,* 2013 IL 114196, ¶ 52. Section 24-5(b) of the Criminal Code of 2012 (Code) (720 ILCS 5/24-5(b) (West 2014)) provides that "[a] person who possesses any firearm upon which any such importer's or manufacturer's serial number has been changed, altered, removed or obliterated commits a Class 3 felony." Section 24-5(a) of the Code is a possessory offense, the elements of which are *mens rea* and possession of a defaced firearm. *People v. Stanley,* 397 Ill. App. 3d 598, 609 (2009). It follows, therefore, that the State was required to prove, beyond a reasonable doubt, that the defendant possessed a firearm with a defaced serial number.

¶ 14   Defendant argues that the State failed to prove that the subject firearm had an obliterated serial number. We agree.

¶ 15   When we review a challenge to the sufficiency of the evidence, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318-19 (1979). A criminal conviction will not be reversed on review "unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt." *People v. Collins,* 214 Ill. 2d 206, 217 (2005).

¶ 16   In this case, Officer Matlob testified that the revolver which he recovered was an "older model" which had a "large scratch" over the serial number. He stated that the serial number had been "scratched off and it was illegible to where I could see it." However, he could not remember on what part of the revolver the scratch was located; nor could he recall where on the gun the serial number was supposed to be located. Officer Matlob admitted that he never saw a serial number on the gun. On cross examination, Officer Matlob was specifically asked whether he saw a serial number. He replied: "I saw an area where it was scratched off." After Officer Matlob again testified

that the scratch which he saw was "rather large," defense counsel asked: "But you don't know what was there before, isn't that true?" Officer Matlob responded: "Well, you're correct sir." The State never introduced the subject revolver, or a photograph of it, into evidence, and Officer Matlob was not qualified as a firearms expert. Additionally, the State failed to produce any evidence that the subject revolver ever had a serial number. Other than Officer Matlob's testimony, the State introduced no other evidence addressing the issue of whether the subject revolver ever had a serial number or, if it did, that the serial number had been defaced of obliterated.

¶ 17    Based upon the evidence of record, we conclude that the State failed to prove an essential element of possession of a firearm with a defaced serial number in violation of section 24-5(b) of the Code; namely, that the subject revolver had a serial number that has been changed, altered, removed, or obliterated. We reverse defendant's conviction on that basis. *People v. Smith*, 185 Ill. 2d 532, 541-42 (1999) (concluding that when the evidence is so unsatisfactory or inconclusive that it creates a reasonable doubt of the defendant's guilt, the conviction must be reversed).

¶ 18    This disposition renders it unnecessary for us to consider defendant's alternate arguments: (1) that he received ineffective assistance of counsel and (2) that section 24-5(b) of the Criminal Code of 2012 (Code) is unconstitutional as applied to him.

¶ 19                                CONCLUSION

¶ 20    We reverse the judgment of the circuit court of Cook County.

¶ 21    Reversed.